ccl2pozp kjc

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x

3  UNITED STATES OF AMERICA,                    New York, N.Y.

4           v.                                  S1 12 Cr. 171(JPO)

5  PAVEL POZNANSKY, et al.,

6           Defendants.

7  ------------------------------x

8                                               December 21, 2012
                                                10:15 a.m.
9
                                                Sentace 4/24/13
10 Before:

11                      HON. J. PAUL OETKEN,

12                                              District Judge

13

14                                              accpurchment
                                                Rest ~ 400k p.14
15                      APPEARANCES
                                                Guidelines 18-24 mos  14
16 PREET BHARARA                                No appeal 24 mos     20
        United States Attorney for the
17      Southern District of New York
   BY:  NICHOLAS McQUAID
18      Assistant United States Attorney

19
   RICHARD D. WILLSTATTER
20 ALEXANDRA V. TSEITLIN
        Attorneys for Defendant
21

22

23

24

25

ccl2pozp kjc

1      THE DEPUTY CLERK:  Your Honor, this is in the matter

2   of United States of America v. Pavel Poznansky.

3      Starting with the government, can I have counsel state

4   their appearance for the record.

5      MR. McQUAID:  Good morning, Judge.  Nick McQuaid for

6   the government.

7      THE COURT:  Good morning.

8      MR. WILLSTATTER:  Good morning.  Richard Willstatter

9   and Alexander Tseitlin for the defendant.

10      MS. TSEITLIN:  Good morning, your Honor.

11      THE COURT:  Good morning.  You may be seated.  If you

12   all would please speak into the mike so the court reporter --

13   and speak slowly so the court reporter can get everything down.

14      Mr. -- is it Poznansky?  Am I saying it right?

15      THE DEFENDANT:  Correct.

16      THE COURT:  You speak and understand English, correct.

17      THE DEFENDANT:  Yes.

18      THE COURT:  Mr. Poznansky, did you sign this waiver of

19   indictment form?

20      THE DEFENDANT:  Yes, I did.

21      THE COURT:  Did you discuss it with your attorney

22   before you signed it?

23      THE DEFENDANT:  Yes, I did.

24      THE COURT:  Do you understand that you are under no

25   obligation to waive indictment?

ccl2pozp kjc

1          THE DEFENDANT: Yes, I do.

2          THE COURT: If you chose not to waive indictment, in

3    order for the government to prosecute you on the superseding

4    indictment, the one count in the superseding information, it

5    would have to present its case to the grand jury, which might

6    or might not return an indictment against you.

7          Do you understand that?

8          THE DEFENDANT: Yes.

9          THE COURT: Do you understand that by signing the

10   waiver of indictment, you are giving up your right to be

11   presented to the grand jury?

12         THE DEFENDANT: Yes.

13         THE COURT: Do you understand what a grand jury is?

14         THE DEFENDANT: Yes, I do.

15         THE COURT: I find the defendant has knowingly and

16   voluntarily waived his right to be indicted by a grand jury

17   with respect to the superseding information.

18         Have you seen a copy of the information?

19         THE DEFENDANT: Yes.

20         THE COURT: The superseding information?

21         THE DEFENDANT: Yes.

22         THE COURT: Do you understand the charges against you,

23   the charge against you?

24         THE DEFENDANT: Yes, I do.

25         THE COURT: Would you like me to read the charge now

1   or do you waive its public reading?

2        THE DEFENDANT:   I waive it.

3        MR. WILLSTATTER:   Your Honor, with respect to the

4   information, I wanted to bring to the court's attention that

5   the overt act will be admitted insofar as Mr. Poznansky treated

6   an undercover officer in furtherance of the conspiracy, but I

7   want to call the court's attention to the actual language of

8   the overt act which is provided unnecessary and excessive

9   acupuncture treatment.   We just got this the other day, and I

10  didn't see this, but the theory that the parties, or at least

11  the defendant is going to admit in furtherance of the

12  conspiracy is that services with respect to this overt act were

13  billed but were not provided, some of the services were billed

14  but not provided.   Remember the discussion with Mr. Haifitz

15  about the bill of particulars, where he talked about unprovided

16  services versus unnecessary services.

17       THE COURT:   Yes.

18       MR. WILLSTATTER:   In this particular case, these

19  were -- it was billing that was for services that were not

20  provided.   Some of the services were provided that day, some

21  were not.   There was a bill for more.   That was in furtherance

22  of the conspiracy.   The parties agree that that is, I think,

23  that is sufficient as far as that overt act is concerned.

24       MR. McQUAID:   Judge, I think two points.   One is I

25  think under the law with conspiracy, it is well settled that

1 | you don't even have to have an illegal overt act for it to be
2 | an overt act. So any act in furtherance is sufficient. There
3 | is no dispute that this was an act in furtherance of the
4 | conspiracy that defendant is going to admit to.

5 | With respect to the excessive and unnecessary
6 | language, first of all, it is an allegation and doesn't
7 | necessarily limit how the defendant wants to admit to the
8 | conspiracy; but, more specifically, our view is, as we
9 | expressed last week or two weeks ago when we were in front of
10 | your Honor that we are talking about same thing. The providing
11 | of a bill for something that was not in fact provided is an
12 | unnecessary excessive treatment. It is just how we choose to
13 | characterize it. So I don't think there is any problem with
14 | the allocution based on what Mr. Willstatter just proffered.

15 | THE COURT: Okay. And you are in agreement that there
16 | is no problem with respect to the overt act alleged in the
17 | superseding information, Mr. Willstatter?

18 | MR. WILLSTATTER: That is correct, your Honor.

19 | THE COURT: So you have seen a copy of the
20 | information, Mr. Poznansky?

21 | THE DEFENDANT: Yes.

22 | THE COURT: And you understand the charge against you?

23 | THE DEFENDANT: Yes.

24 | THE COURT: I think you said you waive the public
25 | reading, yes?

1      THE DEFENDANT:  Yes.

2      THE COURT:  How do you wish to plead today?  Guilty or

3   not guilty.

4      THE DEFENDANT:  Guilty.

5      THE COURT:  Before I accept your plea, I am going to

6   go through a series of questions to satisfy myself that you are

7   pleading guilty because you are guilty and not for some other

8   reason.  If you don't understand any question or if you want a

9   minute to talk to your attorneys, that's fine.  Just let me

10   know and we will take a break.  Please place the defendant

11   under oath.

12      (Defendant sworn)

13      THE COURT:  Mr. Poznansky, you are now under oath.

14   That means if you answer any of my questions falsely, those

15   answers could be used against you in a separate prosecution for

16   perjury.

17      Do you understand that?

18      THE DEFENDANT:  Yes.

19      THE COURT:  Please state your full name.

20      THE DEFENDANT:  Paul Poznansky.

21      THE COURT:  Is it Pavel, P-A-V-E-L, or is it Paul?

22   You go by Paul?

23      THE DEFENDANT:  I mean I change it to Paul.

24      THE COURT:  You changed it to Paul.  Okay.

25      How old are you?

ccl2pozp kjc

1          THE DEFENDANT: 53.

2          THE COURT: Sorry?

3          THE DEFENDANT: 53.

4          THE COURT: How far did you go in school?

5          THE DEFENDANT: Here in Dobb's Ferry, Upstate New

6    York.

7          THE COURT: How far along did you go?

8          THE DEFENDANT: It was 2000.

9          THE COURT: High school, college?

10         THE DEFENDANT: Master's degree.

11         THE COURT: Master's? What was the master's in?

12         THE DEFENDANT: In Oriental medicine.

13         THE COURT: And that was -- where was it? Dobb's

14   Ferry?

15         THE DEFENDANT: Westchester County.

16         THE COURT: Westchester? Okay.

17         THE DEFENDANT: Mercy College.

18         THE COURT: I'm sorry?

19         MR. WILLSTATTER: Mercy College.

20         THE COURT: Have you ever been treated or hospitalized

21   for any mental illness?

22         THE DEFENDANT: No.

23         THE COURT: Have you now or recently been under the

24   care of a doctor or psychiatrist?

25         THE DEFENDANT: No.

ccl2pozp kjc

1    THE COURT: Have you ever been hospitalized -- I'm

2  sorry, is your mind clear today?

3    THE DEFENDANT: Yes.

4    THE COURT: And you understand what's happening in

5  this proceeding?

6    THE DEFENDANT: Yes, I do.

7    THE COURT: Do either counsel have any doubt as to

8  defendant's competence to plead?

9    MR. WILLSTATTER: No, your Honor.

10    MR. McQUAID: No, Judge.

11    THE COURT: Based on his responses to my questions and

12  his demeanor before me, I find the defendant is competent to

13  enter a plea of guilty at this time.

14    Have you had a sufficient opportunity to discuss your

15  case with your attorneys?

16    THE DEFENDANT: Yes.

17    THE COURT: And you have had a chance to discuss the

18  charge you intend to plead guilty to as well as any defenses to

19  the charge and the consequences of pleading guilty?

20    THE DEFENDANT: Yes.

21    THE COURT: And you are satisfied with their

22  representation of you?

23    THE DEFENDANT: Yes.

24    THE COURT: I am now going to explain certain

25  constitutional rights that you have, and I explain these

1    because these are rights that you give up by pleading guilty.

2    Under the Constitution and laws of the United States,

3    you are entitled to a speedy and public trial on the charge

4    contained in the information. At that trial, you would be

5    presumed innocent and the government would be required to prove

6    you guilty beyond a reasonable doubt by competent evidence

7    before you could be found guilty. You would not have to prove

8    you were innocent. A jury of 12 people would have to agree

9    unanimously that you are guilty.

10    Do you understand that?

11    THE DEFENDANT: Yes, I do.

12    THE COURT: At that trial and at every stage of the

13    case, you would be entitled to be represented by an attorney;

14    and if you could not afford one, one would be appointed to

15    represent you. During the trial, the witnesses for the

16    government would have to come to court and testify in your

17    presence, and your lawyer could cross-examine the witness for

18    the government and object to evidence offered by the government

19    and, if you desire, issue subpoenas, offer evidence, and compel

20    witnesses to testify on your behalf.

21    Do you understand that?

22    THE DEFENDANT: Yes, I do.

23    THE COURT: At a trial, although you would have the

24    right to testify if you chose to, you would also have the right

25    not to testify and no inference or suggestion of guilt could be

ccl2pozp kjc

1   drawn from the fact that you did not testify if that's what you

2   chose to do.

3           Do you understand that?

4           THE DEFENDANT: Yes.

5           THE COURT: If you were convicted at trial, you would

6   have the right to appeal that verdict.

7           Do you understand that?

8           THE DEFENDANT: Yes, yes, I do.

9           THE COURT: Even at this time right now, as you are

10  entering this plea, you do have the right to change your mind

11  and plead not guilty and go to trial.

12          Do you understand that?

13          THE DEFENDANT: Yes.

14          THE COURT: If you plead guilty and I accept your

15  plea, you would be giving up your right to the trial and the

16  other rights I have mentioned. There will be no trial.

17  Instead, I will enter a judgment of guilty on the one count in

18  the superseding information and then I will sentence you later

19  on the basis of your guilty plea after considering the

20  submissions by counsel and the probation department.

21          If you plead guilty, you will also have to give up

22  your right not to incriminate yourself because in a minute I am

23  going to ask you questions about what you did so that I can be

24  satisfied that you are pleading guilty because you really are

25  guilty and not for some other reason.

1        Do you understand that?

2        THE DEFENDANT:  Yes.

3        THE COURT:  According to the superseding information,

4   you are charged with conspiracy under 18 U.S.C. 371.  The

5   object of the conspiracy is to commit mail fraud and healthcare

6   fraud according to the information.

7        I will ask Mr. McQuaid, please, to proffer the

8   elements of that offense that the government would seek to

9   establish at trial.

10       MR. McQUAID:  Judge, the elements of the conspiracy

11  under 18 U.S.C. 371 is that, first, that two or more persons

12  entered into an unlawful agreement as charged in the

13  information; second, that the defendant knowingly before he

14  fully became a member of the conspiracy; third, that one of the

15  members of the conspiracy knowingly committed at least one of

16  the overt acts alleged in the conspiracy -- in the information;

17  and that, fourth, that act was in furtherance of the

18  conspiracy.

19       Very quickly, the elements of healthcare fraud and

20  mail fraud, which are the specific violations of the United

21  States law that defendant is charged with having been a part of

22  a conspiracy to commit, for healthcare fraud it is that there

23  was a scheme to defraud a healthcare benefit program or to get

24  money from a healthcare benefit program; that the defendant

25  knowingly and willfully participated in the scheme with

1 awareness of its fraudulent nature and with specific intent to

2 defraud; and that the scheme was conducted in connection with

3 delivery or payment for a healthcare benefit item for services.

4 For mail fraud, similar, either that, first, there was

5 a scheme or artifice to defraud; that the defendant knowingly

6 and willfully participated in the scheme or artifice with

7 knowledge of its fraudulent nature and with specific intent to

8 defraud; and, third, that executing the scheme the defendant

9 used or caused the use of the mails.

10 And, Judge, our offer of proof in this case would be

11 that we would prove beyond a reasonable doubt based on witness

12 testimony, medical records, documentary evidence, including

13 audio and video recordings and physical evidence, that the

14 defendant worked between 2007 and 2012 as an acupuncturist at

15 no fault clinics; and during his work at those clinics, the

16 defendant and others agreed to bill for medical treatments that

17 either were not provided or were medically unnecessary or both;

18 and that the bills for those treatments were sent to insurance

19 companies, some of whom were based in Manhattan; and that

20 payments were made based on those bills to the defendant and to

21 his coconspirators. And we would prove that his actions with

22 respect to conspiracy were knowing and willful and that in

23 September of 2011 that the defendant treated an undercover

24 officer in Brooklyn, New York, in furtherance of the

25 conspiracy.

1      THE COURT:  And that was November when?

2      MR. McQUAID:  I think September 2011.

3      THE COURT:  September 2011?

4      MR. McQUAID:  September 2011.

5      THE COURT:  Okay, thank you.

6      Mr. Poznansky, I asked the government to recite those

7  elements because if there were a trial, that's what I would be

8  instructing the jury they have to find beyond a reasonable

9  doubt, each of those elements, in order to find you guilty.  So

10  I want to you understand that's what it would be like if you

11  did proceed to trial in terms of what I would be explaining to

12  the jury.

13      I also want to explain to you the maximum possible

14  penalty under the law, the statute in this case, the maximum

15  penalty is five years' imprisonment, three years' supervised

16  release.  And when I say "supervised release," that means it is

17  a period of time after a release from any imprisonment where

18  you are subject to monitoring, and there are terms of

19  supervised release and conditions that you must comply with.

20  If you don't comply with them, you could be returned to prison

21  without a jury trial and you are given no credit for the time

22  you served in prison as a result of your sentence and no credit

23  for any time spent on post-release supervision also.  That's

24  supervised release.  The maximum fine under the law is the

25  greatest of $250,000 or twice the total monetary gain from the

ccl2pozp kjc

1  offense or twice the total monetary loss to others from the

2  offense, and there is a $100 special assessment which is

3  mandatory.

4      In addition, pursuant to the plea, there will be

5  restitution in an amount to be ordered by the court, and in

6  this case, according to the plea agreement, you would agree to

7  restitution in the amount of $399,743.27, that is, that amount

8  of restitution as well as the forfeiture allegation, which

9  means that you agree to forfeit to the United States a sum of

10  money, the same amount $399,743.27 representing the amount of

11  proceeds traceable to the offense charged in the information.

12      Are you a United States citizen, Mr. Poznansky?

13      THE DEFENDANT:  Yes.

14      THE COURT:  If you were not a United States citizen,

15  that would mean that it would be far easier for the government

16  to deport you.  But if you are a U.S. citizen, it is not an

17  issue.

18      If your attorney or anyone else has attempted to

19  predict or promise what your sentence will be, that prediction

20  or promise could be wrong.  That's because no one can give you

21  an assurance or promise of the sentence, because I am the one

22  who will decide on your sentence, and I'm not going to do that

23  today.  I'm going to wait until I receive what's called a

24  presentence report prepared by the probation department which

25  has a lot of background information, and then I will consider

ccl2pozp kjc

1    any written submissions from your counsel and the government's

2    counsel and do my own independent calculation of the guideline

3    range and decide what is an appropriate sentence.

4            Do you understand that?

5            THE DEFENDANT:  Yes, I do.

6            THE COURT:  And even if your sentence is different

7    from what your attorney or anyone has told you it might be or

8    different from what you expect, you will still be bound by your

9    guilty plea and will not be allowed to withdraw your plea of

10   guilty.

11           Do you understand that?

12           THE DEFENDANT:  Yes.

13           THE COURT:  Has anyone threatened you or forced you in

14   any way to plead guilty?

15           THE DEFENDANT:  No.

16           THE COURT:  I have a copy of a plea agreement in this

17   case.  It is a letter dated December 19, with signatures under

18   the line -- over the line for Mr. Poznansky and Mr. Willstatter

19   with today's date.

20           Did you sign this plea agreement today?

21           THE DEFENDANT:  Yes.

22           THE COURT:  Did you discuss it with your attorney

23   before you signed it?

24           THE DEFENDANT:  Yes, I did.

25           THE COURT:  Do you believe you understood what was in

ccl2pozp kjc

1    the plea agreement when you signed it.

2                THE DEFENDANT:   Yes.

3                THE COURT:   Did you willingly sign the agreement?

4                THE DEFENDANT:   Yes.

5                THE COURT:   There is also an addendum, which is a

6    general release, for Kali Acupuncture, which relates to release

7    of insurance claims.

8                MR. WILLSTATTER:   These are pending or future claims

9    for a colleague.   This is a significant waiver on the part of

10   Mr. Poznansky because he could otherwise have argued that a

11   portion at least of some of those claims was lawfully earned by

12   him.   So this waiver, in effect, is giving up of a significant

13   financial sum to the insurance companies.

14               THE COURT:   Got it.   Okay.

15               And you understand that you have signed this release

16   as described by your counsel, Mr. Poznansky?

17               THE DEFENDANT:   Yes, I do.

18               THE COURT:   Other than this release and the plea

19   agreement, is there any agreement or understanding you have

20   with the government that's been left out of those documents.

21               MR. WILLSTATTER:   Only that, and we have discussed

22   this, that under the case law and a statute, defendant reserves

23   the right to apply for what's called restoration or

24   discretionary transfer of monies paid in forfeiture to be used

25   for restitution.   The statute is 18 U.S.C. 981(e)(6).   It is

1    referenced in a recent decision from the United States Circuit

2    Court of Appeals for this circuit called United States v. Ana

3    Torres, which was from December 5. I don't have a cite because

4    I reviewed the case on the Circuit Web site.

5            THE COURT: Second Circuit?

6            MR. WILLSTATTER: Yes. Particularly, it cites a case

7    called Kalish, 626 F.3d. So those cases indicate that where

8    money is actually paid as opposed to theory, because in this

9    Ana Torres case, she didn't actually pay any money, the federal

10   defender said there should be restoration. The court said we

11   wouldn't -- we are not going to reach it because she hasn't

12   actually paid. In this case the information has a reference to

13   five accounts that are going to be forfeited that are on page

14   three of the information. Those accounts have more than 40,000

15   in them. So the defendant, again, is making a significant

16   concession that he is not going to argue that any of those

17   monies should be -- were lawfully earned and will agree to

18   forfeit those. But because the defendant has already made

19   these concessions of which I speak, we have -- we reserve the

20   right to apply to the Department of Justice because we

21   understand that the usual policy, at least during this

22   administration, is that they will apply forfeiture to make

23   whole to the extent possible the victims of a crime. So -- and

24   the reason I am bringing this up, I don't mean to belabor it,

25   is because the plea agreement provides that there is a separate

1    amount for restitution and for forfeiture which is lawful, but

2    there is also another provision which we intend to pursue.

3    THE COURT:  Okay.  So that's not a separate agreement,

4    but it is something you want to make clear for the record that

5    under the law you may seek to pursue that restoration.

6    MR. WILLSTATTER:  Exactly.  And the reason I want to

7    make this clear is so that it is understood that the

8    concessions we are making and entering into this plea agreement

9    have been fully discussed with the defendant and he understands

10   all of the consequence of the guilty plea.

11   THE COURT:  Understood.

12   Mr. McQuaid, is there anything you need to clarify or

13   add on that?

14   MR. McQUAID:  No, Judge.

15   THE COURT:  Thank you for clarifying that.

16   So just to ask you, subject to what your counsel,

17   Mr. Willstatter, has stated and the plea agreement we

18   referenced, is there any other agreement you have with the

19   government that has been left out of these documents or is that

20   everything in terms of your agree?

21   THE DEFENDANT:  No, no.

22   MR. WILLSTATTER:  I just want to add one thing, your

23   Honor.  The Exhibit B that they reference, we actually haven't

24   seen that yet because we tried to do this very quickly, so we

25   expect to get that shortly.  We just haven't seen it yet.

ccl2pozp kjc

1  MR. McQUAID: Judge, generally our practice is that we

2  will submit it to Mr. Willstatter, we will get it, there will

3  be a preliminary order of forfeiture, it will come to the

4  court, and then it will be presented before sentencing and that

5  will be a consent order that would come to your Honor.

6  THE COURT: Okay. That's okay with counsel?

7  MR. WILLSTATTER: That's fine. Just wanted to make it

8  clear.

9  THE COURT: Okay. I mentioned, Mr. Poznansky, that

10  the statutory maximum penalties, there is a law called the

11  statute that sets the maximum penalties, but there is also

12  something called the guidelines, sentencing guidelines which

13  sets forth an advisory range based on different types of

14  criminal offenses and criminal histories of the defendants, and

15  that is an advisory range. It is my starting point when I

16  sentence someone. But I can go above it or below it. It

17  doesn't bind me. But it is the starting point. It is kind of

18  advisory range based on, as I said, types of offenses and types

19  of criminal backgrounds. In this case, according to the plea

20  agreement, and it appears to be correct based on my

21  calculation, the guidelines stipulated range is 18 to 24

22  months' incarceration. There is a fine range that is separate

23  from restitution. There is find range of 4,000 to $40,000.

24  You understand that the stipulation binds the

25  government and you, but not me, because I will make my own

ccl2pozp kjc

1    independent calculation about the guidelines. Do you

2    understand that?

3            THE DEFENDANT: Yes, I do.

4            THE COURT: Under the agreement, you are giving up

5    your right to appeal or otherwise challenge your sentence as

6    long as I have sentenced to you 24 months or less

7    incarceration, three years or less supervised release, and with

8    respect to the restitution that I order restitution of

9    $399,743.27 or less.

10            Do you understand that?

11            THE DEFENDANT: Yes, I do.

12            THE COURT: Has anyone made any promise or done

13    anything other than what's -- what we have discussed in the

14    plea agreement and the other agreement to induce to you plead

15    guilty today?

16            THE DEFENDANT: No.

17            THE COURT: Now, Mr. Poznansky, I would ask you if you

18    would tell me in your own words what you did that makes you

19    believe you are guilty of the charge in the information.

20            THE DEFENDANT: On or about and between 2008 and 2011,

21    I agreed with at least one other person to submit no fault

22    insurance claims for acupuncture services.

23            THE COURT: For acupuncture services.

24            THE DEFENDANT: Acupuncture services that I have not

25    actually performed.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1    THE COURT:  Actually performed.  Okay, sorry.

2    THE DEFENDANT:  I was an acupuncturist and I worked in

3  a no fault clinic in Brooklyn.  Some of the bills that I

4  submitted to the insurance carriers contained claims for

5  services I did not perform.  Some of the bills were mailed to

6  insurance carriers in Manhattan.

7    THE COURT:  Okay.  And do you also admit that in

8  September 2011, you provide either unnecessary or excessive or

9  I guess nonexistent treatment for which you then billed an

10  insurance company?

11    THE DEFENDANT:  Yes.

12    THE COURT:  Does government counsel agree that there

13  is a sufficient factual predicate for the plea?

14    MR. McQUAID:  Yes, Judge.

15    THE COURT:  I ask defense counsel.

16    MR. WILLSTATTER:  Yes, your Honor.

17    THE COURT:  Does defense counsel know of any valid

18  defense that would prevail at trial or any reason why your

19  client should not be permitted to plead guilty?

20    MR. WILLSTATTER:  No, your Honor.

21    THE COURT:  Mr. Poznansky, since you acknowledge that

22  you are in fact guilty as charged and since I am satisfied that

23  you know your rights, including your right to go to trial, and

24  you are aware of the consequences of the plea, including the

25  sentence that may be imposed, and since I find you are

1  voluntarily pleading guilty, I accept your guilty plea and I

2  hereby enter a judgment of guilty on Count One of the

3  superseding information to which you are pleading guilty.

4  Now, the probation department will want to interview

5  you in connection with the presentence report that it will

6  prepare. As I said, I do read that report very carefully.

7  There is a lot of detail in it about you and about the nature

8  of the crime, and I take it very seriously. Each person is

9  different and so when you are interviewed, please make sure you

10  are truthful about everything. Not being truthful can have a

11  negative effect on your sentence. And you will have a chance

12  to review and make any corrections, so please speak with your

13  lawyers about any corrections you need to make in the draft of

14  the presentence report.

15  Now we just need to set the sentencing date.

16  THE COURT: Can we do April 24?

17  MR. WILLSTATTER: Okay.

18  THE COURT: April 24 at 2 p.m. and that will be in 40

19  Foley Square, which is the old courthouse, basically across

20  Pearl Street. In Courtroom 706 is where that will be. April

21  24 at 2:00 p.m. will be sentencing. Ordinarily I ask for any

22  sentencing submissions, assuming there is no delay in the

23  presentence report process, two weeks before -- defendant's

24  submission two weeks before sentencing, which is April 10, and

25  the government's submission, if any, due April 17.

ccl2pozp kjc

1    Any objection to the current bail conditions being
2  continued pending sentencing?

3    MR. McQUAID: No, Judge.

4    MR. WILLSTATTER: No, your Honor.

5    THE COURT: Okay. All the conditions, Mr. Poznansky,
6  on which you were released up till now continue to apply. Any
7  violation of those conditions could have a negative consequence
8  for the plea. If you have any questions about them, talk to
9  your lawyers. So I assume you will continue to comply with
10  those conditions.

11    It is also important that you be in this courtroom --
12  I'm sorry, in Courtroom 706, 40 Foley Square, on the date of
13  sentencing, April 24, at 2:00 p.m. If you don't show up for
14  sentencing, it is a separate crime known as bail jumping. Do
15  you understand that?

16    THE DEFENDANT: Yes.

17    THE COURT: Okay. I will see you then. Thank you
18  very much. Anything else that we need to cover?

19    MR. McQUAID: No, thank you, Judge.

20    MR. WILLSTATTER: Thank you. Have a good holiday.

21                     - - -

22

23

24

25